**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| MONICA PLACK, RICHARD PLACK, and GRAM AND GRAMP'S HOUSE IS HOME, LLC, | |
| Plaintiffs, | |
| v. | Case No. _____ |
| PERRY TOWNSHIP, OHIO, | **COMPLAINT** |
| Defendant. | Jury Trial Demanded |

1.       Plaintiffs Monica Plack, Richard Plack, and Gram and Gramp's House is Home,

LLC ("Gram and Gramp's House"), by and through their attorneys, allege the following:

**INTRODUCTION**

2.       Responding to the need for affordable, quality assisted living for seniors with

disabilities in Ohio—necessitated by the aging of the Baby Boomers' generation and the dearth

of such living facilities in Ohio—Plaintiffs Monica Plack and Richard Plack purchased a house

(the "Cinwood Property") in Perry Township, in Stark County, Ohio, intending to use it to

operate Gram and Gramp's House, a residential care home for seniors who need assistance with

one or more major life activities, such as bathing, dressing, and eating.

3.       However, Perry Township refused to allow Plaintiffs to open their residential care

home, erroneously and discriminatorily applying the Perry Township Zoning Resolution

(hereinafter, "Zoning Resolution") to exclude Plaintiffs' proposed residential care home as a

permitted use in the Township's R-2 Single and Two-Family Residential Zoning District. The

Township also, despite Plaintiffs' requests, deliberately refused to grant reasonable modifications

to the Township's Zoning Resolution so that the proposed residential care home would be a permitted use.

4.      In addition, in direct response to Plaintiffs' continued efforts to secure the rights of seniors with disabilities to live in a home of their choice, and explicitly acceding to the local community's biased discontent with Plaintiffs operating a residential care home at the Cinwood Property, Perry Township has retaliated by threatening, coercing, interfering with, or intimidating Plaintiffs.

5.      As a result of the Township's discriminatory actions, Plaintiffs were never able to open their proposed residential care home.

6.      Perry Township's discriminatory application of its Zoning Resolution, repeated refusal to permit Plaintiffs to open and operate their residential care home for people with disabilities, and retaliatory actions violate the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, and its implementing regulations at 24 C.F.R. pt. 100, the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.*, and its implementing regulations at 28 C.F.R. pt. 35, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulations at 24 C.F.R. pt. 8.

7.      Plaintiffs have suffered damage as a result of the actions of Perry Township, including lost profits, attorneys' fees, emotional distress, and the inability to operate their residential care  home. The Township's refusal to allow Plaintiffs to operate their residential care home has also denied seniors with disabilities in the Township and elsewhere in Ohio the opportunity to enjoy equal access to the housing of their choice.

8.      Plaintiffs seek declaratory and injunctive relief to enjoin Perry Township's conduct, as well as monetary damages, costs, and reasonable attorneys' fees.

2

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction of Plaintiffs' claims pursuant to 28

U.S.C. § 1331, 42 U.S.C. § 3613(a), 42 U.S.C. §12133, and 29 U.S.C. §794a.

10.     Plaintiffs' claims for relief are authorized by 28 U.S.C. § 1343, the Declaratory

Judgment Act, 28 U.S.C. §§ 2201–2202, and Federal Rules of Civil Procedure 57 and 65.

11.     This action arises under the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*; the

Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.*; and Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794.

12.     Venue is proper in the Northern District of Ohio under 28 U.S.C. § 1391 because

all actions and omissions giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

13.     Gram and Gramp's House is Home, LLC is a limited liability company organized

under the laws of the state of Ohio, established in 2019 to operate a residential care home to

provide quality residential support for seniors with disabilities. Gram and Gramp's House will

provide the individuals with disabilities who live there assistance with the major life activities of

daily living, such as bathing, dressing, eating, and washing clothes, thus helping them avoid

more costly and segregated institutional placements. All of the prospective residents of Gram and

Gramp's House will have disabilities and are thus protected from discrimination on that basis by

the Fair Housing Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation

Act of 1973. By virtue of its association with those residents, Gram and Gramp's House, as well

as its owners, Monica and Richard Plack, are similarly protected against discrimination because

of disability.

3

14.     Monica Plack is the co-owner and operator of Gram and Gramp's House and the property located at 4035 Cinwood Street, Northwest, Massillon, Ohio 44646. She is an occupational therapist with over 20 years of experience caring for seniors in residences, nursing homes, rehabilitation facilities, and hospitals.

15.     Richard Plack is Monica Plack's husband and a co-owner and operator of Gram and Gramp's House and the property located at 4035 Cinwood Street, Northwest, Massillon, Ohio 44646.

16.     Perry Township, Ohio is a local governmental entity located within the Northern District of Ohio. The Township is responsible for the acts of its agents and employees and, through the Township's Zoning Inspector, Zoning Commission, Board of Zoning Appeals, and Law Director, is responsible for the enforcement of the Perry Township Zoning Resolution. For the purposes of this action, the Zoning Inspector, Law Director, and Board of Zoning Appeals acted on behalf of, and as the lawful agents of, Perry Township. The Township is a public entity under the Fair Housing Act and the Americans with Disabilities Act, and a recipient of federal financial assistance under Section 504 of the Rehabilitation Act.

## STATUTORY AND REGULATORY FRAMEWORK

17.     In 1988, Congress amended the Fair Housing Act ("FHA") to extend the guarantee of fair housing to "handicapped" individuals. *See* 42 U.S.C. § 3604(f). Congress authorized the Secretary of the United States Department of Housing and Urban Development to promulgate regulations to implement the FHA. *See* 42 U.S.C. § 3614a.

18.     Under the FHA, the term "handicap" means, with respect to a person, a "(1) physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of such an impairment, or (3) being regarded as having such an

4

impairment." 42 U.S.C. § 3602(h). The term "physical or mental impairment" includes "[a]ny physiological disorder or condition . . . affecting one or more of the following body systems: Neurological; musculoskeletal; special sense organs; respiratory, including speech organs; [and] cardiovascular." 24 C.F.R. § 100.201(a)(1). "Major life activities" include "functions such as caring for one's self." *Id.* § 100.201(b).

19. The FHA makes it unlawful to discriminate against or "otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter, [or] a person residing in or intending to reside in that dwelling after it is sold, rented, or made available." 42 U.S.C. § 3604(f)(1)(A)–(B).

20. The FHA further provides that it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of" either "a handicap of that person; or a person residing in or intending to reside in that dwelling after it is sold, rented, or made available." 42 U.S.C. § 3604(f)(2)(A)–(B).

21. The FHA further provides that it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the handicap of . . . any person associated with [the buyer or renter]." 42 U.S.C. § 3604(f)(2)(C).

22. Under the FHA, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

23.     The federal regulations implementing the FHA specifically prohibit "[e]nacting or implementing land-use rules, ordinances, policies, or procedures that restrict or deny housing opportunities or otherwise make unavailable or deny dwellings to persons because of . . . handicap." 24 C.F.R. § 100.70(d)(5).

24.     The federal regulations implementing the FHA further make it unlawful, because of handicap, "to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to . . . discourage or obstruct choices in a community, neighborhood or development." 24 C.F.R. § 100.70(a).

25.     The FHA provides that it "shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted" under the FHA. 42 U.S.C. § 3617. Additionally, the federal regulations implementing the FHA prohibit covered entities from "[r]etaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act" or "[r]etaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority." 24 C.F.R. § 100.400(c)(5)–(6).

26.     Title II of the Americans with Disabilities Act ("ADA") requires that "no qualified individual with a disability[1] shall, by reason of such disability, be excluded from

---

[1] The terms "handicap" in the FHA and "disability" in the ADA have the same legal meaning. *Compare* 42 U.S.C. § 3602(h) *with* 42 U.S.C. § 12102(1). *See also Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (noting that the definition of "disability" in the ADA is "drawn almost verbatim from the definition of . . . 'handicap' contained in the Fair Housing Amendments Act of 1988"). Except when discussing the text of the FHA and Section 504 of the Rehabilitation Act, this complaint uses the term "disability," which is more generally accepted.

participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

27.     Under the ADA, a disability is defined as "a physical or mental impairment that substantially limits one or more major life activities . . .; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(1).  The term "[p]hysical or mental impairment" includes "[a]ny physiological disorder or condition . . . affecting one or more body systems, such as: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), [and] cardiovascular." 28 C.F.R. § 35.108(b)(1)(i). "Major life activities" include functions such as "[c]aring for oneself, performing manual tasks, . . . eating, sleeping, . . . reaching, lifting, bending, speaking, [and] working." *Id*. § 35.108(c)(1)(i).

28.     Under the ADA, a public entity includes "any State or local government," and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A)–(B).

29.     The federal regulations implementing Title II of the ADA provide, inter alia, that

A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability—

(i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;
(ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;
(iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others; . . .
(vii) Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

28 C.F.R. § 35.130(b)(1).

7

30.     The federal regulations implementing Title II of the ADA prohibit a public entity, "directly or through contractual or other arrangements," from

[U]tiliz[ing] criteria or methods of administration:

> (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; or
> (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities . . . .

28  C.F.R. § 35.130(b)(3)(i)–(ii).

31.     The federal regulations implementing Title II of the ADA provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

32.     The federal regulations implementing Title II of the ADA provide that

> A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.

28 C.F.R. § 35.130(b)(8).

33.     The federal regulations implementing Title II of the ADA require that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

34.     The federal regulations implementing Title II of the ADA provide that "[a] public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual

8

or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."  28 C.F.R. § 35.130(g).

35.     The federal regulations implementing the ADA prohibit a public entity from "administer[ing] a licensing . . . program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability," and from "establish[ing] requirements for the programs or activities of licensees that subject qualified individuals with disabilities to discrimination on the basis of disability."  28 C.F.R. § 35.130(b)(6).

36.     Title V of the ADA prohibits "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by" the ADA and "coerc[ing], intimidat[ing], threaten[ing], or interfer[ing] with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected" by the ADA. 42 U.S.C. § 12203(a)–(b). The federal regulations implementing the ADA contain similar prohibitions. *See* 28 C.F.R. § 35.134(a)–(b).

37.     Recipients of federal financial assistance are subject to Section 504 of the Rehabilitation Act of 1973 ("Section 504"), which mandates that no individual with a disability "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" because of her disability. 29 U.S.C. § 794(a). Upon information and belief, Perry Township is a recipient of federal financial assistance. Therefore, it must comply with Section 504 and its implementing regulations.

38.     The federal regulations implementing Section 504 define an "individual with handicaps" as "any person who has a physical or mental impairment that substantially limits one

or more major life activities; has a record of such an impairment; or is regarded as having such an impairment." 24 C.F.R. § 8.3. The term "physical or mental impairment" includes "[a]ny physiological disorder or condition . . . affecting one or more of the following body systems: Neurological; musculoskeletal; special sense organs; respiratory, including speech organs; [and] cardiovascular." *Id.* "Major life activities" include "functions such as caring for one's self." *Id.*

39.     The federal regulations implementing Section 504 make it unlawful to "[d]eny a dwelling to an otherwise qualified buyer or renter because of a handicap of that buyer or renter or a person residing in or intending and eligible to reside in that dwelling after it is sold, rented or made available." 24 C.F.R. § 8.4(b)(1)(vii).

40.     Under the federal regulations implementing Section 504, recipients of federal financial assistance may not deny individuals with disabilities the benefit of housing, aid, benefits, or services, or afford the opportunity to benefit from housing, aid, benefits, or services in a manner unequal to the opportunity provided to others. 24 C.F.R. § 8.4(b)(1)(i)–(ii). Similarly, a recipient of federal financial assistance may not "[p]rovide different or separate housing, aid, benefits, or services to individuals with handicaps or to any class of individuals with handicaps from that provided to others," "deny a dwelling to an otherwise qualified buyer or renter because of the handicap of that buyer or renter or a person residing in or intending and eligible to reside in that dwelling after it is sold, rented, or made available," or "otherwise limit a qualified individual with handicaps in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the housing, aid, benefit, or service." *Id.* § 8.4(b)(1)(iv), (vii)–(viii).

41.     The federal regulations implementing Section 504 also provide that

[A] recipient may not . . . utilize criteria or other methods of administration the purpose or effect of which would:

10

> (i) Subject qualified individuals with handicaps to discrimination . . .; [or]
> (ii) Defeat or substantially impair the accomplishment of the objectives of the recipient's federally assisted program or activity for qualified individuals with a particular handicap involved in the program or activity, unless the recipient can demonstrate that the criteria or methods of administration are manifestly related to the accomplishment of an objective of a program or activity.

24 C.F.R. § 8.4(b)(4)(i)–(ii).

42.     The federal regulations implementing Section 504 also require that recipients of federal financial assistance "administer programs and activities receiving Federal financial assistance in the most integrated setting appropriate to the needs of qualified individuals with handicaps." 24 C.F.R. § 8.4(d).

43.     Under Section 504, recipients of federal financial assistance must grant reasonable accommodations to qualified individuals with handicaps in order for them to have meaningful access to the benefits of a covered program. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985).

44.     Section 504 regulations provide that a covered entity may not "[i]ntimidate or retaliate against any individual, whether handicapped or not, for the purpose of interfering with any right secured by section 504 or this subpart." 28 C.F.R. § 42.503(b)(1)(vii).

45.     An entity's obligation to comply with Section 504 and its regulations "is not obviated or alleviated by any State or local law or other requirement that, based on handicap, imposes inconsistent or contradictory prohibitions or limits upon the eligibility of qualified individuals with handicaps to receive services." 24 C.F.R. § 8.4(e).

11

## FACTS

**A. The Stark County, Ohio government has issued the necessary approvals for the Placks to use the Cinwood Property as a single- or two-family dwelling.**

46.     On December 20, 2019, Plaintiffs Monica and Richard Plack purchased the Cinwood Property to operate Gram and Gramp's House. The Cinwood Property is located in an R-2 Single and Two-Family Residential Zoning District of Perry Township in Stark County, Ohio.

47.     The Cinwood Property is constructed to serve as either a single- or two-family home.

48.     Prior to purchasing the home, on or about December 17, 2019, the Placks received approval from the Stark County Regional Planning Commission to—because of the Property's ability to serve as either a single- or two-family home—assign each side of the Cinwood Property different street addresses. One side is addressed 4035(A) Cinwood Street and the other is addressed 4035(B) Cinwood Street.

49.     On January 7, 2020, after conducting an inspection of the Cinwood Property, the Stark County Department of Building Inspection, the entity tasked with enforcing the residential building code adopted by the Stark County Board of Commissioners, issued Plaintiffs a Certificate of Occupancy, approving the Cinwood Property for use as a "1 Family Adult Care" home.

50.     On March 25, 2020, the Stark County Department of Building Inspection issued a second Certificate of Occupancy, approving the Cinwood Property for use as a "2 Family Residence."

51.     As a result of receiving the necessary approvals from Stark County, Plaintiffs have all of the approvals needed to seek licenses (i.e., one license for each unit) to operate a

12

residential care home through the Ohio Department of Mental Health and Addiction Services and to then begin operating Gram and Gramp's House as either a single-family home, with five senior residents with disabilities, or a two-family home, with 10 senior residents with disabilities (five residents in each unit).

**B. Perry Township's discriminatory actions.**

**a. The Perry Township Zoning Resolution authorizes a wide variety of group living arrangements, even without special accommodation.**

52.     Perry Township's zoning rules, regulations, and resolutions are contained in the Township's Zoning Resolution, adopted by resolution by the Perry Township Zoning Commission on June 17, 1958, and last amended on March 17, 2015.[2]

53.     Section 702.2 of the Zoning Resolution permits residents to use, within an R-2 Single and Two-Family Residential District, a "building, structure, or premises" as a "[s]ingle family dwelling," including "[a] family home licensed under [Ohio Revised Code] Section 5123.19," or as a "[t]wo-family dwelling." Zoning Resolution § 702.2(A)(1)–(2).

54.     The Zoning Resolution defines "family" as "[o]ne or more persons occupying a dwelling unit and living as a single housekeeping unit, provided that unless all members are related to each other by blood, legal marriage, no such family will contain more than five (5) persons." Zoning Resolution, Article IV, Definitions, at 14.

55.     The Zoning Resolution defines a single-family dwelling as "[a] separate building occupied or constructed to be occupied exclusively for residence purposes by one family or housekeeping units." *Id.* at 13. The Resolution defines a two-family dwelling as "[a] separate

---

[2] *Available at* https://www.perrytwp.com/wp-content/uploads/2018/04/Current-Zoning-Resolution-02-23-18.pdf.

13

building occupied or constructed to be occupied exclusively for residence purposes by two families or housekeeping units." *Id.*

56. A "family home" is defined as "a residential facility that provides room and board, personal care, habilitation services, and supervision in a family setting for not more than eight (8) persons with developmental disabilities." *Id.* at 14.

57. The Ohio Revised Code ("ORC") Section 5123.19, referenced in Section 702.2(A)(1)(a) of the Zoning Resolution, concerns residential facilities licensed to serve the developmentally disabled. Ohio Rev. Code § 5123.19.

58. Section 702.2 further provides that "[t]he Board of Zoning Appeals may issue Conditional Zoning Certificates for," inter alia, "[i]nstitutions for human medical care— hospitals, sanitariums, convalescent homes, nursing homes, homes for the aged and philanthropic institutions." Zoning Resolution § 702.2(B)(5).

59. Thus, Defendant's Zoning Resolution permits a wide range of housing options for congregate or group living arrangements, including the uses intended by Plaintiffs.

### b. Perry Township's Zoning Inspector and Law Director refused to issue a zoning letter approving the operation of Gram and Gramp's House at the Cinwood Property.

60. Prior to purchasing the Cinwood Property, on November 7, 2019, Ms. Plack called Tim Cugini, the Zoning Inspector for Perry Township, to obtain a zoning letter stating that the operation of Gram and Gramp's House at the Cinwood Property was an approved use.

61. Later the same day, Mr. Cugini called Ms. Plack and informed her that he approved the Cinwood Property for use as a residential care home for seniors with disabilities.

62. Approximately a month later, in a December 13, 2019, email, Mr. Cugini retracted his verbal approval, explaining that the law director for Perry Township, Charles Hall,

14

advised him that Plaintiffs were not permitted to operate Gram and Gramp's House in the R-2 Zoning District because their "proposed Adult Care Home, Adult Group Home, Adult Care Facility, Adult Care Residential Dwelling" was not a facility for the developmentally disabled, as required under ORC Section 5123.19.

63.    In the same email, Mr. Cugini informed Ms. Plack that she could appeal Mr. Hall's decision to the Perry Township Board of Zoning Appeals (hereinafter, "Zoning Board") or propose a text amendment change of the Zoning Resolution to allow for her residential care home in the R-2 Zoning District.

64.    In response, on the same date, December 13, 2019, Ms. Plack sent a letter to Mr. Cugini disputing Mr. Hall's decision that operating Gram and Gramp's House at the Cinwood Property was not a permissible use under the Zoning Resolution. Specifically, she explained that her proposed use—housing a maximum of five seniors with disabilities in each unit of the Cinwood Property—was a permitted use under Section 702.2, as the proposed residents in each unit would be living as a "single housekeeping unit" and would therefore constitute a "family" under the Zoning Resolution.

65.    Additionally, Ms. Plack explained that she was not seeking a permit pursuant to Section 702.2(A)(1)(a), which permits the use of a building or premises as a family home licensed under ORC Section 5123.19, because that section exclusively governs the licensing of facilities to serve the developmentally disabled, but Gram and Gramp's House would exclusively serve seniors with disabilities.

66.    Ms. Plack also emphasized that because her residential care home was a permissible use under the Zoning Resolution, she was permitted to begin operating her home—

15

with or without the Zoning Department's permission—after receiving her license(s) from the Ohio Department of Mental Health and Addiction Services.

67.     Mr. Hall responded to Ms. Plack's December 13 letter on December 16, 2019. Instead of addressing the information provided in Ms. Plack's letter, Mr. Hall recommended that she discuss her options to contest Perry Township's zoning decision with her own legal counsel.

68.     In her email response of the same date, Ms. Plack requested that Mr. Hall, on behalf of Perry Township, provide a reasonable accommodation to its Zoning Resolution to allow Plaintiffs to operate Gram and Gramp's House, explicitly requesting "an exception to any rules that [he felt] may limit [the Placks'] home for elderly residents with disabilities."

69.     Ms. Plack requested a reasonable accommodation even though the Zoning Resolution permits a residential care home like Gram and Gramp's House to operate in an R-2 residential district. Ms. Plack requested the accommodation in an effort to move forward as soon as possible with opening a residential care home for seniors with disabilities at the Cinwood Property.

70.     Later that day, Andrew Margolius, the Placks' attorney at the time, called Mr. Hall to further discuss Perry Township's refusal to issue Plaintiffs a zoning letter for the Cinwood Property. In a December 16 email summarizing the telephone conversation, Mr. Hall raised a new concern, claiming that because the Placks would be charging a "fee" for seniors with disabilities to reside at the Cinwood Property, the Property was not a residence, but was instead "an institution for medical care [or] convalescence nursing care" and would therefore be used for a "[c]onditionally [p]ermitted [u]se," requiring a Conditional Zoning Certificate from the Zoning Board. *See* Zoning Resolution § 702.2(B)(5).

71.     On the same day that Mr. Hall, for the second time, denied Ms. Plack's request to operate Gram and Gramp's House at the Cinwood Property, Mr. Cugini sent a letter to the Placks confirming that a two-family dwelling or duplex is a permitted use within the R-2 Zoning District.

72.     On December 17, 2019, Roger Westfall, a professional architect and Certified Code Consultant representing the Placks in the development of their proposed residential care home, wrote to Mr. Hall to explain that:

    a.  Pursuant to the Zoning Resolution, the Gram and Gramp's House residents in both Unit A and Unit B of the Cinwood Property would reside as a "family" or a "single housekeeping unit," sharing family meals, entertainment, and fellowship;

    b.  Gram and Gramp's House will serve adults, assisting with daily activities such as eating, laundry, and personal hygiene, but not providing any counseling, medical treatment, or skilled nursing care as would a licensed medical facility, and is therefore not a "conditionally permitted use" under Section 702.2(B)(5);

    c.  Section 702.2(A)(2) of the Zoning Resolution, in permitting the use of a building as a "[t]wo-family dwelling," permits the use of the Cinwood Property as two separate housekeeping units—one at 4035(A) Cinwood Street and the other at 4035(B) Cinwood Street;

    d.  It is improper for Perry Township to permit the unconditional use of residential care homes licensed pursuant to ORC Section 5123.19 to serve the developmentally disabled, but to not permit the unconditional use of residential care homes to serve seniors with disabilities; and

17

> e. The Placks are not charging a "fee" for Gram and Gramp's House residents to live at the Cinwood Property, but are instead charging one amount for rent, as do landlords who rent to "five (5) unrelated college adults paying rent to live in an apartment."

73.     Ms. Plack also wrote to Mr. Hall on December 17, 2019, reemphasizing the explanations provided in Mr. Westfall's letter and further explaining that the Cinwood Property, which includes an A and B unit, would be licensed through the Ohio Department of Mental Health and Addiction Services to serve a maximum of 5 residents in each unit. In other words, the use of the Cinwood Property to operate Gram and Gramp's House—as a "single family dwelling" or "two-family dwelling"—is a permitted use under Section 702.2(A)(1) and (A)(2) of the Zoning Resolution. She requested that Mr. Hall acknowledge Gram and Gramp's House as a permitted use of the Cinwood Property.

74.     On the same date, the Placks wrote a letter to Mr. Cugini, requesting, in the alternative, that Mr. Cugini interpret Section 702.2(A)(1)(a), permitting the use of a family home for the developmentally disabled, to also permit the use of a residential care home for seniors with disabilities.

75.     In a December 17, 2019, letter, Mr. Cugini responded by stating what everyone already knew—that a family home, defined as a home for the developmentally disabled, licensed under ORC Section 5123.19, is a permitted use in an R-2 Zoning District. He did not address whether Gram and Gramp's House—a home for seniors with disabilities—would be approved as a permitted use in an R-2 Zoning District.

76.     On or about December 17, 2019, Plaintiffs filed an appeal to the Zoning Board for a fee of $350.

18

**c. Perry Township acquiesced to community opposition and its Zoning Board denied Plaintiffs' appeal.**

77. Since purchasing the Cinwood Property, the Placks have faced overwhelming community opposition to the use of the Cinwood Property to operate Gram and Gramp's House. Residents of the local community have made Facebook posts, placed signs in their yards, taken photographs of activity at the Cinwood Property, made harassing phone calls to the Placks, placed harassing letters in the mailbox at the Cinwood Property, and visited the Placks at their private residence to demonstrate their opposition.

78. This opposition came to a head on January 6, 2020, when the Zoning Board held a public zoning appeals meeting and heard from Plaintiffs regarding their appeal of Mr. Cugini and Mr. Hall's denial of their request for a zoning letter approving the operation of Gram and Gramp's House at the Cinwood Property.

79. Instead of quelling the misinformed and biased opposition Plaintiffs faced, the Board encouraged it, taking a vote to see how many residents were "against" Gram and Gramp's House operating at the Cinwood Property and allowing those in opposition to state their opposition on the record. Several of the statements made by those in opposition reveal that the opposition was based on the disabilities of Plaintiffs' prospective residents:

    a. The past President of the Stark County Association of Realtors, past President of the Board of Realtors, and General Manager of DeHoff Realtors testified that: "[I]f someone was going to buy in the neighborhood, and they heard a group home, or whatever you want to tag it as [was in the neighborhood], there would be a concern."

    b. An attorney representing a resident of Perry Township testified that: "[T]aking care of older folks, even folks that have the ability to rescue themselves in the

event of a fire, it takes a lot to take care of them. . . . And that is going to

generate considerable traffic in what I would suggest is a pretty tight

residential area. Traffic from the residents; traffic from all of the employees

that are caring for the residents; the nurses, the doctors, the Hospice workers,

the therapists, the cooks, the housekeepers, those taking care of the outside of

the facility, all of that adds up to something that I think this Board would

recognize is more than the neighbor across the street." He also stated that his

"common sense would indicate that [operating Gram and Gramp's House at

the Cinwood Property] will have a detrimental effect on the adjacent property

. . . and the neighboring properties."

   c.   A resident of Perry Township testified that he does not want a resident of

Gram and Gramp's House who may have memory loss "struggling out" in the

neighborhood. He added: "What if nobody finds him and the guy dies in our

neighborhood? I don't want that."

   d.   Another resident of Perry Township testified that: "So now [you] are going to

put, you know, disabled residents in there. And it is scary. I am concerned

about the health and well-being of not only our community, but of the

residents you are about to place in your home. Because I don't think that the

doorways are big enough for a wheelchair to get through, nor is the elevator

that is in the home."

80.    At the end of the hearing, despite Karen Ramos, one of the Board members,

acknowledging that the use of the Cinwood Property as a residential care home was (at the very

least) "preempted and exempt from the Perry Township Zoning Resolution," the Board, including Ms. Ramos, voted to deny Plaintiffs' appeal.

81.     Following this decision, Larry Wilhelm, the Chairman of the Board, stated to those attending the hearing that the Placks had "30 days to appeal [their] decision," "there will be a lawsuit," and the "Court will probably overrule [the Board], because of the Fair Housing Act and all of that."

### C. Perry Township's discrimination caused injury to Plaintiffs.

82.     Perry Township intentionally discriminated against Plaintiffs and their prospective residents by endorsing discriminatory community opposition and applying its Zoning Resolution to prohibit residential care homes for seniors with disabilities.

83.     Perry Township's actions have prevented Plaintiffs from opening Gram and Gramp's House, accepting residents, and operating their residential care home in a home zoned for single- or two-family use in Perry Township.

84.     Perry Township's actions have denied housing opportunities to seniors with disabilities in Perry Township. As a result of Perry Township's actions, prospective residents of Gram and Gramp's House are restricted in their opportunities to live in the housing of their choice and to receive housing and disability-related services, thus interfering with their right to integrated housing and services.

85.     In doing the acts or in omitting to act as alleged in this Complaint, each of Defendant's employees and agents, including each member of the Perry Township Zoning Department, was acting in the course and scope of his or her actual or apparent authority, or the alleged acts or omissions of each member as agent were subsequently ratified and adopted by Perry Township as principal.

21

86.     Perry Township and its agents knew that Plaintiffs would be providing housing and services for people with disabilities and acted intentionally and willfully, with callous and reckless disregard for the statutorily protected rights of Plaintiffs and their prospective residents, entitling Plaintiffs to putative damages.

87.     Plaintiffs have been injured by the discriminatory conduct of Perry Township, which has caused them damages, including emotional distress, economic loss, and a loss of civil rights. Therefore, Plaintiffs are entitled to compensatory damages.

88.     Plaintiffs have no adequate remedy at law. They are now suffering and will continue to suffer irreparable injury from Perry Township's acts and its pattern or practice of discrimination because of disability unless relief is provided by this Court. Accordingly, Plaintiffs are entitled to injunctive relief.

## CAUSES OF ACTION

### COUNT I
### Fair Housing Act, 42 U.S.C. § 3601, *et seq.*

89.     Plaintiffs reallege and incorporate by reference all preceding paragraphs, as if fully set forth herein.

90.     Plaintiffs are "aggrieved persons" as defined by 42 U.S.C. § 3602(i).

91.     Plaintiffs' residential care home is intended to provide housing and services to persons with handicaps, as defined by 42 U.S.C. § 3602(h).

92.     By applying the Perry Township Zoning Resolution to prohibit the operation of Gram and Gramp's House in the R-2 Single and Two-Family Residential Zoning District, denying Plaintiffs' requests for zoning relief, and refusing to make reasonable accommodations to its Zoning Resolution necessary to allow Plaintiffs to operate housing for people with disabilities, Defendant, Perry Township, has:

22

a. Interpreted and applied its Zoning Resolution in a manner that discriminates against persons with disabilities by refusing to permit a residential care home for seniors with disabilities in the R-2 residential zoning district, in violation of 24 C.F.R. § 100.70(d)(5);

b. Made unavailable the housing owned by Plaintiffs to the potential residents of Gram and Gramp's House because they are persons with disabilities, in violation of 42 U.S.C. § 3604(f)(1);

c. Discriminated in the provision of services in connection with Gram and Gramp's House because the potential residents of Gram and Gramp's House are persons with disabilities, in violation of 42 U.S.C. § 3604(f)(2);

d. Failed or refused to make reasonable accommodations in rules, policies, practices, or services when such accommodations are necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B);

e. Restricted or attempted to restrict the choices of a person so as to discourage or obstruct choices in a community, neighborhood or development, in violation of 24 C.F.R. § 100.70(a);

f. Denied Plaintiffs' requests for a zoning variance because of discriminatory animus against persons with disabilities, in violation of 42 U.S.C. § 3604(f) and 24 C.F.R. § 100.70(d)(5); and

g. Coerced, intimidated, threatened, and interfered with Plaintiffs because they asserted their rights to provide assisted living services to seniors with disabilities in Perry Township, in violation of 42 U.S.C. § 3617.

23

93.     The past and continuing acts and conduct of Perry Township, described above, were and are intentional and have been carried out with malice and/or reckless indifference to the federally protected rights of Plaintiffs and their proposed residents.

94.     Defendant has intentionally and knowingly engaged in the practices described above, with the intent of denying rights under the Fair Housing Act.

**COUNT II**
**Titles II and V of the Americans with Disabilities Act,**
**42 U.S.C. § 12132, *et seq.***

95.     Plaintiffs reallege and incorporate by reference all above paragraphs, as if fully set forth herein.

96.     Plaintiffs are associated with and/or attempting to provide housing and services to people with disabilities, as defined in 42 U.S.C. § 12102(1).

97.     Perry Township is a public entity under 42 U.S.C. § 12131(1).

98.     Perry Township, through its actions described above, has:

    a.  Discriminated against qualified individuals with disabilities, in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130;

    b.  Failed to make a reasonable modification to its policies, practices, or procedures necessary to avoid discrimination against persons with disabilities, in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(7);

    c.  Denied the prospective residents of Gram and Gramp's House an opportunity to participate in a program in the most integrated setting appropriate to their needs, in violation of 28 C.F.R. § 35.130(d);

    d.  Utilized zoning requirements that are not imposed upon other groups of related or unrelated non-disabled persons to deny Plaintiffs, because of the disabilities of the

24

prospective residents of Gram and Gramp's House, the enjoyment of their civil rights, in violation of 28 C.F.R. § 35.130(b).

    e.    Retaliated or otherwise discriminated against Plaintiffs because they have opposed an act or practice made unlawful by the ADA, in violation of 42 U.S.C. § 12203(a) and 28 C.F.R. § 35.134(a); and

    f.    Coerced, intimidated, threatened, or interfered with Plaintiffs' potential residents' exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the ADA, in violation of 42 U.S.C. § 12203(b) and 28 C.F.R. § 35.134(b).

99.    The past and continuing acts and conduct of Perry Township, described above, were and are intentional and have been carried out with malice and/or reckless indifference to the federally protected rights of Plaintiffs and their proposed residents.

100.    Defendant has intentionally and knowingly engaged in the practices described above, with the intent of denying rights under the ADA.

## COUNT III
### Section 504 of the Rehabilitation Act, 29 U.S.C. § 794

101.    Plaintiffs reallege and incorporate by reference all above paragraphs, as if fully set forth herein.

102.    The Plaintiffs are associated with and/or attempting to provide housing and services to individuals with handicaps, as defined in 24 C.F.R. § 8.3.

103.    Perry Township, through its actions described above, has:

a.   Discriminated against persons with disabilities by denying Plaintiffs' requested zoning variances and refusing to make reasonable accommodations or modifications to its Zoning Resolution, in violation of 29 U.S.C. § 794(a);

b.   Failed to make a reasonable accommodation or modification in its policies and practices when necessary to avoid discrimination, in violation of 29 U.S.C. § 794(a);

c.   Denied housing to the potential residents of Gram and Gramp's House because they are persons with disabilities, in violation of 24 C.F.R. § 8.4(a) and (b)(1)(vii);

d.   Utilized zoning requirements that are not imposed upon other groups of related or unrelated non-disabled persons in a manner that denies the prospective residents of Gram and Gramp's House an equal opportunity to benefit from the housing, aid, benefits, or services of Perry Township, in violation of 24 C.F.R. § 8.4(b)(1)(ii);

e.   Denied housing to Gram and Gramp's House because the prospective residents of its residential care home are persons with disabilities, in violation of 24 C.F.R. § 8.4(b)(1)(vii);

f.   Limited the prospective residents of Gram and Gramp's House in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the housing, aid, benefit, or services of Perry Township, in violation of 24 C.F.R. § 8.4(b)(1)(viii);

g. Denied the prospective residents of the Gram and Gramp's House an opportunity to participate in a program in the most integrated setting appropriate to their needs, in violation of 24 C.F.R. § 8.4(d); and

h. Intimidated or interfered with Plaintiffs' potential residents' rights secured under the Rehabilitation Act, in violation of 28 C.F.R. § 42.503.

104. The past and continuing acts and conduct of Perry Township, described above, were and are intentional and have been carried out with malice and/or reckless indifference to the federally protected rights of Plaintiffs and their proposed residents.

105. Defendant has intentionally and knowingly engaged in the practices described above, with the intent of denying rights under Section 504 of the Rehabilitation Act.

## RELIEF SOUGHT AS TO ALL COUNTS

Based on the foregoing, Plaintiffs respectfully request that the Court grant them the following relief:

a) Accept jurisdiction over their claims herein;

b) Declare that Defendant's actions described above constitute violations of the Fair Housing Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act;

c) Enjoin Defendant, its agents, employees, assigns, successors, and all other persons in active concert or participation with them from discriminating on the basis of disability, in violation of the Fair Housing Act, Titles II and V of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act;

d) Enjoin Defendant, its agents, employees, assigns, successors and all person in active concert or participation with them from refusing to permit the operation of Gram and Gramp's House at the Cinwood Property;

27

e)      Enjoin Defendant from enforcing the Zoning Resolution in a manner that prohibits the operation of Gram and Gramp's House at the Cinwood Property;

f)      Require Defendant, its agents, employees, assigns, successors, and all other persons in active concert or participation with them to make reasonable accommodations in Defendant's policies, practices, rules, or services for the Plaintiffs' residential care home and their prospective residents, as required by the Fair Housing Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act;

g)      Award Plaintiffs compensatory damages for their out-of-pocket losses, reputational harm, emotional damages, other economic harms, and interference with and frustration of Gram and Gramp's House's mission to provide community-based housing to seniors with disabilities caused by Defendant's discriminatory conduct;

h)      Award Plaintiffs punitive damages in an amount to be determined at trial that would punish Defendant for its intentional, malicious, willful, callous, wanton, and reckless disregard for Plaintiffs' rights, and would effectively deter Defendant from engaging in similar conduct in the future;

i)      Award Plaintiffs their reasonable attorneys' fees and costs incurred in this action pursuant to 42 U.S.C. §§ 3613(c)(2) and 12205, 28 C.F.R. § 35.175, and 29 U.S.C. § 794a(b); and

j)      Order such other relief as the Court deems just, proper, and equitable.

**JURY DEMAND**

Plaintiffs hereby request a jury trial for all claims for which a jury is permitted.


DATED: May 27, 2020                    Respectfully submitted,

                                       *Stephen M. Dane*
                                       /s/
                                       _____
                                       Stephen M. Dane (0013057)
                                       DANE LAW LLC
                                       312 Louisiana Ave.
                                       Perrysburg, OH 43551
                                       (419) 873-1814
                                       sdane@fairhousinglaw.com

                                       Jean M. Zachariasiewicz
                                       *Application for Pro Hac Vice to be filed*
                                       Anisha S. Queen
                                       *Application for Pro Hac Vice to be filed*
                                       Brown, Goldstein & Levy, LLP
                                       120 E. Baltimore Street, Suite 1700
                                       Baltimore, MD  21202
                                       Phone: 410-962-1030
                                       Fax: 410-385-0869
                                       jmz@browngold.com
                                       aqueen@browngold.com